UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GLEN NAGHTIN,

        Plaintiff,

v.

MONTAGUE FIRE DISTRICT
BOARD and DENNIS ROESLER,

        Defendants.
_____/

Case No. 1:14-CV-1224

Hon. Gordon J. Quist

## OPINION

Plaintiff, Glen Naghtin, served as a firefighter with the Montague Fire Department (the Department) for over 30 years. In October 2011, Naghtin circulated a petition among the Department's firefighters urging reinstatement of the Department's previous captain. Naghtin sent the petition to Dennis Roesler, the Department's Fire Chief, and the members of the Montague Fire District Board (the Board). The Board construed the petition as an employee complaint that, according to the Department's personnel procedures, should have been turned over to the Fire Chief in the first instance. Roesler recommended that the Board terminate Naghtin for failure to follow the prescribed procedures, and the Board followed that recommendation. Following his termination, Naghtin sued Roesler and the Board, asserting that his termination violated his rights the First Amendment. The parties have filed cross-motions for summary judgment, and the matter is now ready for decision.

### *Background*

Naghtin began working as a firefighter with the Department in 1980. (ECF No. 1 at Page ID#1.) Roesler became Chief of the Department in 1998. (*Id.* at Page ID#2.)

In 2010, Roesler demoted his brother, Donald Roesler, from the position of Captain of the Department. (*Id.* at Page ID##2-3.) The following year, Naghtin circulated a document, which he

calls a petition, among the Department's firefighters. (*Id.* at Page ID#3.) The petition was signed by 13 firefighters and sent to Roesler and members of the Board. (ECF No. 31-1.) It states that the signatories "would like Donald Roesler II reinstated to the position of Captain." (*Id.*) It goes on to explain:

> Don has an abundance of knowledge and experience, both from the Montague Fire District and the United States Navy. Don has received leadership training from the military and specialized training through the First District that are invaluable assets that can't be provided by another member of the Fire Department. A person with Don's level of knowledge, training and experience is a rare commodity.
>
> Don has invested over 25 years into the Fire District and our community as a Fire Fighter. 12 of those years were spent being the Captain.
>
> Don possesses many qualities that can't be easily replaced. For the long term good of the Fire District, Fire Department, and its taxpayers, we feel that any and all things possible should be done to reinstate Donald Roesler II to the position of Captain as soon as possible.

(*Id.*)

The Board's attorney advised the Board that the petition should be construed as a complaint. (ECF No. 33-5 at Page ID#174.) The Department's Personnel Policies and Procedures (PPP) set forth a four-step procedure for employee complaints. (ECF No. 31-3 at Page ID#87.) In particular, the PPP provide that an employee must first submit a complaint to the Fire Chief and, if that does not resolve the issue, request an officer's meeting. (*Id.*) If the employee does not resolve the issue during those first two steps, he may then submit the complaint to the Board. (*Id.*) The PPP further provides that employees may be terminated for violating the PPP. (*Id.*)

On November 29, 2011, the Board's personnel committee held a meeting at which it determined that the letter should be construed as a complaint subject to the four-step procedure outlined in the PPP. (ECF No. 31-2.) The committee also determined that Naghtin had violated the PPP on other occasions. (*Id.*) On December 3, 2011, the Board informed Naghtin that it had concluded that he violated the PPP and would hold a special meeting regarding disciplinary actions.

2

(ECF No. 31-4.) At that meeting, Roesler recommended that the Board terminate Naghtin's employment, and the Board voted to accept the recommendation. (ECF No. 31-6.) Following his termination, Naghtin filed this suit.

*Legal Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

*Discussion*

A plaintiff alleging a claim of First Amendment retaliation must demonstrate that (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from engaging in such conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012).

**1.     Constitutionally Protected Conduct**

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 1958 (2006) (citation omitted). "However, public employees do not forfeit all their First Amendment rights simply because they are employed by the state or a municipality." *Handy-Clay*, 695 F.3d at

3

539. "[T]he First Amendment protects a public employee's right, under certain circumstances, to speak as a citizen on matters of public concern." *Id.*

In addressing First Amendment claims, courts must keep in mind that "[t]he interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it." *City of San Diego v. Roe*, 543 U.S. 77, 82, 125 S.Ct. 521, 525 (2004). The Supreme Court's decisions "have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions." *Garcetti*, 547 U.S. at 420, 126 S.Ct. at 1959. The premise underlying these decisions is "that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance process.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 154, 103 S. Ct. 1684, 1694 (1983).

The Supreme Court has established a three-part test to balance the interests at stake. To establish that he engaged in protected conduct, a plaintiff must demonstrate that (1) his speech was made as a private citizen, rather than pursuant to his official duties; (2) his speech involved a matter of public concern; and (3) "his interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees." *Handy-Clay*, 695 F.3d at 540 (internal quotation marks omitted).

A. <u>Private Citizen</u>

As the Supreme Court explained in *Garcetti*, a public employee does not speak as a private citizen when he "make[s] statements pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1960. The Court explained:

> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

4

*Id.* at 421–22, 126 S.Ct. at 1960. Recently, however, the Supreme Court made clear that the exception from First Amendment protection for speech made pursuant to an individual's official duties—known as the *Garcetti* exception—is a narrow one. *Lane v. Franks*,--- U.S. ---, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014). Such exception "must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment." *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015). Thus, "[t]he question of whether speech concerns a personnel matter is a question about whether it addresses a matter of public concern, not whether the employee is speaking as a citizen." *Id.*

The Court cannot say that the petition at issue was "itself ordinarily within the scope of [Naghtin's] duties." *Lane*, 134 S. Ct. at 2379. Moreover, because the operative question at issue is whether the petition concerned a personnel matter, the Court's analysis will focus on whether it addressed a matter of public concern. *See Boulton*, 795 F.3d at 534.

B.  Matter of Public Concern

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48, 103 S. Ct. at 1691. "In general, a matter of public concern is a 'matter of political, social, or other concern to the community.'" *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) (quoting *Connick*, 461 U.S. at 146, 103 S. Ct. at 1690). In evaluating a First Amendment claim, courts must "distinguish matters of public concern from internal office politics." *Id.* "'The mere fact that public monies and government efficiency are related to the subject of a public employee's speech do[es] not, by [itself], qualify that speech as being addressed to a matter of public concern.'" *Id.* (quoting *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir.1988)). The Sixth Circuit has found "mere assertions of incompetence and poor management decision-making to be run-of-the-mill employment disputes—particularly when the recommended course of action would

benefit the employee." *Boulton*, 795 F.3d at 532 (listing cases).  Speech addresses a matter of public concern, however, "when it alleges corruption and misuse of public funds, failure to follow state law, major state policy decisions, or discrimination of some form." *Id.* (internal citations omitted).

In *Connick*, the Court addressed a First Amendment claim brought by an assistant district attorney.  The plaintiff, upon learning that she was going to be transferred, submitted a survey to her coworkers that addressed various office management issues.  The Court found that, with the exception of one question, the focus of the survey question was merely an "extension[] of [the plaintiff's] dispute over her transfer" as opposed to being of "public import in evaluating the performance of the District Attorney as an elected official." *Id.* at 148, 103 S.Ct. at 1690.  The Court noted that the survey "did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases[,]" nor "seek to bring to light actual or potential wrongdoing or breach of public trust." *Id.* at 148, 103 S. Ct. at 1690-91.  The Court went on to explain:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149, 103 S. Ct. at 1691.

Like the survey at issue in *Connick*, the petition in this case represents an extension of Naghtin's dispute with Roesler over a personnel decision rather than a matter of public import in evaluating the Fire Chief as a public official.  The petition did not concern a matter of "political, social, or other concern to the community," *Id.* at 146, 103 S. Ct. at 1690.  On the contrary, the petition focused on internal office politics—whether Donald Roesler should have a leadership

6

position within the Department, and whether Roesler acted incompetently as Fire Chief by demoting his brother.

Naghtin's reliance on *Stinebaugh v. City of Wapakoneta*, No. 14-4262, 2015 WL 7003757 (6th Cir. Nov. 10, 2015) is misplaced. In that case, a firefighter called three city counsel members to express his opinion that purchasing a new rescue engine was not a good use of taxpayer funds. *Id.* at *1. In finding that the firefighter's speech related to a matter of public concern, the court explained that "[e]xposing governmental inefficiency, mismanagement, or misappropriation of public money are matters of considerable public significance." *Id.* (internal citations and quotation marks omitted). In this case, however, Naghtin did not expose wasteful government spending or misappropriation of public funds. Rather, he expressed his disagreement with Roesler's personnel decision. Such a complaint represents the "quintessential employee beef: management has acted incompetently" that the Sixth Circuit has repeatedly held does not constitute protected conduct. *See Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir. 2007) (internal quotation marks omitted).

C. <u>Balancing</u>

Even if Naghtin could show that the petition addressed a matter of public concern, he would have to satisfy the balancing test established in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731 (1968). Under that test, a public employee must demonstrate that his "free speech interests outweigh the efficiency interests of the government as employer." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). "Considerations involved in this balancing test include whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012) (internal quotation marks omitted).

The Tenth Circuit's decision in *Belcher v. City of McAlester*, 324 F.3d 1203 (10th Cir. 2003) is helpful in performing the balancing test in the instant case. In *Belcher*, a firefighter contacted members of the city council to urge against the purchase of a new fire truck. *Id.* at 1205. In doing so, the firefighter violated a city administrative policy that prohibited employees from contacting city council members outside public meetings, as well as a fire department regulation that prohibited contacting a legislative body without prior approval. *Id.* The court held that the firefighter's interest in contacting council members was outweighed by the employer's interest in directing communications through internal channels and promoting harmony among the department's employees. *Id.* at 1208-09.

Similarly, in this case, the PPP prohibited Naghtin from bringing his complaints directly to the Board. Rather, the PPP provided a procedure for employees to attempt to resolve complaints through the chain of command. If Naghtin had followed such procedure, he could have brought his concerns to the Board's attention without facing discipline for violation of the PPP. Instead, Naghtin chose to forego the procedures outlined in the PPP in order to go over Roesler's head. Under the circumstances, the Department's interest in maintaining an efficient procedure for resolving employee complaints outweighed Naghtin's interest in bringing his complaints directly to the attention of the Board.

**2.      Qualified Immunity**

Roesler argues that, even if the Court finds a constitutional violation, he is entitled to qualified immunity because the scope of the *Garcetti* exception was not clearly established when Naghtin was terminated. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane*, 134 S. Ct. at 2381 (internal quotation marks omitted). Under the qualified immunity doctrine, a government official that violated a constitutional right cannot be held liable unless the right was clearly established when the official acted. *Id.*

8

After the Supreme Court's decision in *Garcetti*, the Sixth Circuit instructed courts to look to a number of factors to determine whether an employee's speech was made pursuant to his official duties. *Handy-Clay*, 695 F.3d at 540. These factors included the impetus for the plaintiff's speech, the setting of the speech, the speech's audience, the speech's general subject matter. *Id.* The court further advised courts should consider whether statements were made up the chain of command, whether statements were made inside or outside the workplace, and whether statements concerned the subject matter of the speaker's employment. *Id.* at 540-41.

The Sixth Circuit also held that most jobs have an inherent duty of internal communication. *See Boulton*, 795 F.3d at 533. Relying on that reasoning, the court held that a park ranger's statements to a personnel consultant hired by his employer were not made as a private citizen. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir.2007). Similarly, the court held that the *Garcetti* exception applied to a memorandum from a police officer to his chief about the wisdom of a pending staff reduction, *Haynes v. City of Circleville*, 474 F.3d 357, 364 (6th Cir.2007), and a teacher's complaints to her supervisors about her class sizes, *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348–49 (6th Cir.2010).

In 2014, however, the Supreme Court made clear that the *Garcetti* exception must be construed narrowly. *Lane*, 134 S. Ct. 2369. The Court clarified that such exception does not apply to speech that "simply relates to public employment," but only to speech that "is itself ordinarily within the scope of an employee's duties." *Id.* at 2379. Given the limitations outlined by the Court, it is not clear whether the Sixth Circuit's prior cases describing the *Garcetti* exception are still good law. *See Boulton*, 795 F.3d at 533 (noting that applying that *Garcetti* exception had proven "challenging" prior to the decision in *Lane*).

The actions at issue in this case occurred after the Supreme Court's decision in *Garcetti*, but before the decision in *Lane*. Given the relatively expansive view of the *Garcetti* exception at that

time, Roesler could have reasonably believed that such exception applied in this case. Specifically, in light of the fact that Naghtin's speech was a form of internal communication, and that it addressed the subject matter of his employment, Roesler could have reasonably believed that it was made as part of Naghtin's official duties, rather than in his capacity as a private citizen. Accordingly, Roesler would be entitled to qualified immunity for any constitutional violation.

### *Conclusion*

Naghtin's statement that he believed Donald Roesler should be reinstated as captain, submitted in the form of a petition to the Board, did not address a matter of public concern. Moreover, even if it had, the Department's interest in promoting an efficient system of communication and dispute resolution outweighed Naghtin's free speech interests under the circumstances. Accordingly, Defendants did not violate Naghtin's First Amendment rights, and they are entitled to summary judgment on the claim against them.

An order consistent with this Opinion shall issue.


Dated: March 30, 2016             /s/ Gordon J. Quist
                                               GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE